November 18, 1863.

## SUPREME COURT—IN ADMIRALTY.

### RICHARD MATHISON *vs.* BERNARD H. DAILY.

THE discharge of the libellant, without a trial under the provisions of Section 1178 of the Civil Code, operates merely as a technical acquittal, creating a bar to his being prosecuted criminally, and does not preclude the masters or owners from setting up as a defence to the libellant's claim for wages, the plea, that he attempted to fire the vessel.

Such attempt being established, his claim for wages is conclusively barred.

At Chambers, before Justice ROBERTSON.

The libellant, a colored citizen of the United States, shipped as an ordinary seaman, or green hand, on board of the whaling bark "Martha 2d," at New Bedford, in the month of September, 1862, for a three years voyage in the Pacific Ocean. In the month of February, 1863, the vessel touched at the port of San Carlos, in Chile, and in the month of April arrived off this port. On the night of the 11th April, while the ship was lying on and off outside this port, she was discovered to be on fire in the fore hold. Through the prompt exertions of the officers and some of the crew the fire was extinguished, and the vessel saved from impending destruction. There were unmistakable tokens of the vessel having been wilfully set on fire, and the respondent, who is master of the ship, caused several of the crew, among whom was the libellant, to be placed in irons, on

suspicion of having committed the crime. The ship continued to lie on and off, and, on the morning of the 14th April, the master, having had his suspicions of the libellant's guilt confirmed, brought him on shore, and carried him before the Consul of the United States, who, after an investigation of the matter, expressed his opinion that, in justice to the owners of the vessel, the libellant ought not to be allowed to proceed to sea in the ship again. The master then caused the libellant to be arrested by the local authorities, and, after an examination had before the Police Justice of Honolulu, he was duly committed, on the 15th April, to stand his trial before the Supreme Court, at the July Term, or thereafter, the jurors in attendance for the April Term, having been discharged on the previous day. The vessel proceeded on her voyage, and the libellant was kept in custody until the last day of the October Term of the Supreme Court, when, as the vessel had not returned with the witnesses for the prosecution, he was set at liberty by order of the Court, under the provisions of Section 1178 of the Civil Code, the Attorney General being unable to proceed against him. The discharge of the libellant from custody, under those circumstances, operated, by express provision of the Statute, as an acquittal, so far that the libellant cannot be legally held again to answer, criminally, for the offence with which he was then charged. Soon after the libellant had been released from prison, the ship returned from the Arctic Ocean, having made a successful cruise. The respondent sent a written request to the libellant to report himself on board the ship, but he refused to comply with that request; and the Consul of the United States, upon application to him, hesitated or declined to issue an official request to the Marshal to apprehend the libellant as a deserter, under the provisions of the United States laws and treaty stipulations. And, now the libellant presents his libel before this Court, claiming that he is entitled to his discharge from the shipping contract, by reason of the acts of the master; that he should be paid wages up to this date, at the lay for which he agreed to serve for the voyage ; and that he should be awarded damages, for alleged maltreatment at the hands of the respondent.

Before the Court can sustain the libellant's claim for wages, it

must appear either that he has fulfilled the contract of shipment ·upon his part by serving till the end of the voyage, or that he is unable to do so through physical disability, or that he is prevented from doing so by the act of the master or owners of the ship. It is not ·contended on behalf of the libellant that either of the first two pre-requisites has been shown to exist; but it is claimed that he is released from the obligation to complete his period of service through the wrongful acts of the master, and that he was justified in his refusal to render himself on board again, through a well founded fear of future harsh treatment at the hands of the respondent, who, it is alleged, had before displayed a cruel and tyrannical disposition.

I am unable to discover anything in the testimony laid before the Court touching the conduct of the master towards the libellant, that could afford the slightest pretext for holding that the acts of the former have been in any degree wrongful, malicious, or intentionally injurious. In causing the libellant·to be handcuffed and placed in confinement on the night of the 11th of April, the respondent did no more than his duty required of him, in view of the strong suspicions that were thrown upon the libellant, in connection with the attempt to burn the ship. The master appears to have comported himself prudently in that emergency. He used no unnecessary severity towards Mathison, or the men who were at first suspected. The libellant was kept in confinement only from Saturday night till Tuesday morning, during which time he was allowed his meals as usual, and permitted to go out upon deck when necessary. After an inquiry among the crew, the master's suspicions against Mathison became so strong that he brought him on shore, and carried him before the Consul, and it was subsequently resolved to invoke the aid of the local authorities to bring Mathison to trial. The Supreme Court was in session at the time, but the jurors had been discharged for the term, and the libellant was therefore committed to await his trial at a future time. It does not appear to have occurred to those concerned to ask that a special term of the Supreme Court should be held for the trial of Mathison, a request which might have been granted under the peculiar circumstances of the case, for, in order to prosecute

him at the July term, it would have been necessary to have detained here as witnesses three of the officers and five or six of the crew of the vessel. No doubt the respondent fully expected to return to Honolulu in time for the October term, and had not the ship made an unusually long passage down from the Arctic Ocean, he and the witnesses would have arrived here in good season for that term.

But it is contended on behalf of the respondent that, even if the voyage were now terminated, or if the libellant can be held discharged from the further performance of his contract, through the acts of the master, he is debarred from setting up any claim for wages, by reason of his complicity in the attempt to burn the ship. Had the libellant been regularly tried before a jury, and acquitted of the crime imputed to him, he might have returned to his duty on the ship with credit, completed his contract, and entitled himself to his full wages for the entire voyage. But his discharge by the Supreme Court, without his having undergone a trial, operates merely as a technical acquittal, creating a bar to his being prosecuted criminally, and does not preclude the master or owners from setting up, as a defense to the libellant's claim for wages, the plea that he attempted to fire the vessel. The libellant, by commencing the present suit, voluntarily challenged his accusers to produce the proofs of his guilt ; and they have done so. A large number of the officers and crew attached to the vessel at the time of the occurrence in question have given their testimony before the Court, and the weight of that testimony is largely against the libellant. Had the same testimony been spread before a jury, in all probability the libellant would have been found guilty. For my part, after careful reflection upon all the evidence, I do not entertain the slightest doubt that Mathison's was the hand that fired the ship on the 11th of April, and that too without a shadow of provocation, so far as now appears, and to the imminent peril of all on board. His claim for wages is therefore conclusively barred.

The libellant's claim for damages for alleged maltreatment at the hands of the master may be disposed of in a few words. A more palpably trumped up demand never was presented, even before a Court of Admiralty. There is not one iota of proof to

sustain it ; and the libellant's effrontery in putting forward such a claim is only equalled by the adroitness with which he has succeeded in so completely deceiving and misleading a Proctor of the Court, as to induce him to sign his name to this libel on his behalf. Never, in any case, have the allegations of harsh treatment, or of having displayed a cruel and tyrannical disposition, made against a ship-master, been more triumphantly repelled and disproved than they have been in this case.

The last prayer of the libellant is, that he be declared absolved from the further fulfillment of his contract, by reason of the acts of the respondent. But nothing has been shown in the whole course of the respondent's conduct which would authorize the Court so to hold or declare. No act yet done by him amounts to a violation or legal determination of the contract. In causing the libellant to be confined on board the vessel, and in endeavoring to bring him to trial, the respondent simply did what was his bounden duty ; and he performed it as a humane man and a judicious ship-master. In view of the clear evidence of the libellant's wrongful and malicious conduct, the Court would regard it as an agreeable thing to be able to decree, judicially, that the contract is at an end, for if the libellant should be permitted to go to sea in the vessel again, the interests of the owners might thereby, for obvious reasons, be seriously compromised. But the Court cannot thus decree at the suit of the libellant himself ; it must leave him just where it found him. His position is a singular one. Had he been tried by a jury and convicted, the conviction would have severed him from the ship. But as the matter now stands, his contract for service on board the "Martha 2d" is still subsisting, legally, and yet it is difficult to see how he could be dealt with as a deserter, under the provisions of the Laws of Congress. Had a cross libel been presented to the Court on behalf of the owners, praying that Mathison should be compelled to return on board and perform his stipulated duty, as bound by maritime law, it might have been within the power of the Court to have decreed accordingly, and to have ordered his rendition by the Marshal. I should have felt very much inclined so to have ordered, but only with a view to facilitate his being regularly discharged before the Consul, and to relieve the master

from his obligation to return the libellant to the United States.

The libellant was allowed to commence his suit upon filing a juratory caution, and it appears that he has no means of paying the costs incurred. Were I not satisfied that the libellant's Proctor has been imposed upon by his client, I should deem it right, and in accordance with the practice of Admiralty Courts, to hold the Proctor responsible for costs. It would be but a slight penalty for the superlative falsehood of his libel if the Court should order the libellant's commitment to prison at hard labor for a term sufficient to cover the amount of the costs, reckoning at the usual rate at which fines are thus liquidated under our Statutes. But I forbear to make such an order, lest I might, by imprisoning the libellant, embarrass the action of the Consul of the United States in any course which he may feel himself authorized to adopt touching the matter.

The libel is dismissed, with costs.

A. B. Bates, Esq., for the libellant.

C. C. Harris, Esq., for the respondent.